LAW OFFICES OF
# FEFERMAN & WARREN
300 Central Avenue, S.W.
Suite 2000 East
Albuquerque, New Mexico 87102
consumer@nmconsumerwarriors.com

Richard N. Feferman
Susan M. Warren
Rob Treinen
Charles Parnall

Phone (505) 243-7773
Fax (505) 243-6663

January 13, 2009

**Via Fax ONLY to (214) 692-5534**
Steven R. Dunn
North Central Plaza III, Suite 250
12801 North Central Expressway
Dallas, TX 75243

      Re: *Anchondo, et al. v. Anderson, Crenshaw & Associates, LLC.*, No. 08-CV-202 (D. N.M.)

Dear Mr. Dunn:

Thank you for ACA's responses to Ms. Anchondo's first set of discovery. The responses are evasive and incomplete. Ms. Anchondo seeks to resolve the disputes about these responses without Court involvement, if possible.

The Court requires motions to compel to be brought within 20 days of service of the objections. *See*, D. N.M. LR-Civ. 26.6. Ms. Anchondo requests that ACA provide supplemental discovery responses so that they are received by this firm no later than January 21, 2009. Unless these discovery disputes are resolved, Ms. Anchondo intend to file a motion to compel on January 26, 2009.

## Requests Concerning Numerosity and a Class List

ACA refuses to divulge any information or documents that would allow Ms. Anchondo to show the size of the putative class. This information and these documents are clearly relevant. This information and these documents would help Ms. Anchondo establish numerosity under Rule 23. *See*, FRCP 23(a)(1). The requested information and documents would also help Ms. Anchondo assemble a class list, which is necessary for class notice purposes. *See*, FRCP 23(c)(2).

In Requests for Admission Nos. 1, 2, 3 and 4, Ms. Anchondo asks ACA to admit or deny that The Voicemail Message was left for a certain number (50, 200, 500 and 1,000, respectively) of putative class members during the class time period. ACA refuses to admit or deny these requests. Rather, ACA argues that the requisite information is not "easily obtainable."



ACA fails to discharge its discovery obligations concerning Requests for Admission Nos. 1, 2, 3 and 4. Under Rule 36, if ACA contends that it cannot admit or deny a request for admission, it must "set forth in detail" the reasons it cannot answer. FRCP 36(a)(4). Conclusory statements are not sufficient. *See*, *Kelly v. Montgomery Lynch & Associates, Inc.*, No. 1:07-CV-919, 2007 U.S. Dist. LEXIS 93651 at *6-7 (N.D. Ohio Dec. 13, 2007). Moreover, a "reasonable inquiry" must include review of information obtained from agents or others for which ACA has the ability to obtain information:

> In the context of requests for admissions, "reasonable inquiry" includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary response.

*Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D. N.Y. 1992) (citations omitted). Where the information sought is contained in documents in another's hands but available to the defendant, the defendant must review the documents to obtain the information. "A party may be required to produce documents which are in the possession of third parties, where he has custody or control of those documents." *Central National Bank in Chicago v. Baime*, 445 N.E.2d 1179, 1183 (Ill. Ct. App. 1982).

> Discovery must be a cooperative undertaking by all parties and their conduct toward the end that the merits of the case may be expeditiously ascertained for the purpose of promoting either a fair settlement or a fair trial; it is not a game of tactical harassment or obstruction.

*Id.* at 1182.

Here, it is clear that ACA can obtain the information needed to admit or deny Requests for Admission Nos. 1, 2, 3 and 4. In Interrogatory No. 5, Ms. Anchondo asks ACA to state the number of putative class members. In response, ACA states that it is in the process of obtaining the requested information and "will supplement this interrogatory answer."

Based on ACA's response to Interrogatory No. 5, it is also clear that ACA could answer Interrogatory No. 6, in which Ms. Anchondo asks ACA to provide the names, addresses and telephone numbers of the putative class members, or, in other words, provide a class list. ACA could also respond to subpart (c) of Request for Production No. 3, in which Ms. Anchondo asks ACA to produce documents pertaining to the accounts associated with each putative class member. ACA refuses to do so. ACA argues that Interrogatory No. 6 is "too broad", imposes an undue burden and would require it to violate the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA"). ACA argues that Request for Production No. 3 calls for disclosure of confidential documents and would require it to violate the FDCPA.

ACA's objections to Interrogatory No. 6 and Request for Production No. 3 are bogus.

Interrogatory No. 6 is not over broad. With this request, Ms. Anchondo asks for the information needed for a class list.

2

Interrogatory No. 6 is not unduly burdensome. This lawsuit is a class action. The unduly burdensome objection is not intended to prevent discovery that causes some burden on the producing party, only discovery that causes an *undue* burden.

> A party who objects to discovery as unduly burdensome has the burden to show facts that justify the objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. This imposes an obligation to provide sufficient detail in terms of time, money and procedure required to produce the requested documents. Discovery should be allowed unless the hardship imposed on the responding party is unreasonable in light of the benefits to be secured from the discovery. In making a decision regarding burdensomeness, a court should balance the burden on the interrogated party against the benefit to the discovering party of having the information.

*Brooke Credit Corporation v. Lobell Insurance Services, L.L.C.*, No. 06-2577, 2007 U.S. Dist. LEXIS 84814 at *4-5 (D. Kan. Nov. 15, 2007).

> All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.

*Creighton Saint Joseph Regional Healthcare, LLC d/b/a Saint Joseph Hospital – Creighton University Medical Center v. Lakeland Engineering Equipment Company*, No. 8:07-CV-113, 2007 U.S. Dist. LEXIS 86752 at *4-5 (D. Neb. Nov. 13, 2007), *quoting*, *Continental Illinois National Bank & Trust Company of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991). Given the highly relevant nature of the information that Ms. Anchondo has requested in Interrogatory No. 6, the burden on ACA is not undue.

Responding to Interrogatory No. 6 and Request for Production No. 3 would not require ACA to violate the FDCPA. The FDCPA's prohibition on disclosure to third parties does not apply to discovery in FDCPA class actions. *See, Kelly*, 2007 U.S. Dist. LEXIS 93651 at *9-10.

With Interrogatories Nos. 9 and 10, Ms. Anchondo tries a new tack. In Interrogatory No. 9, Ms. Anchondo seeks contact information for the creditors from whom ACA obtained the right to collect, where The Voicemail Message was utilized. In Interrogatory No. 10, Ms. Anchondo seeks contact information for the telephone service companies that ACA hired to leave The Voicemail Message. The contact information for these companies will allow Ms. Anchondo to subpoena them and depose their Rule 30(b)(6) representatives, to help her prove up numerosity and assemble a class list, in the event that ACA absolutely refuses to give up information about the putative class size and the identities of the putative class members. Discovery directed to these companies will also help Ms. Anchondo show commonality and typicality under Rule 23 and help her rebut ACA's affirmative defense of bona fide error as the discovery would likely show that ACA directed The Voicemail Message to be left for putative class members via a well defined mechanical process, controlled entirely by ACA, without individual variation and without decision making input from the telephone servicing companies. *See*, FRCP 23(a)(2) and (3); Docket No. 3, answer, ¶ 34 (alleging bona fide error defense); *Johnson v. Riddle*, 443 F.3d

3

723, 728 (10th Cir.) ("*Johnson II*") (concerning intent component of mistake of law bona fide error defense, debt collector must first show that it did not intentionally violate the FDCPA but plaintiff can rebut this claim "by inferential evidence"); *Edwards v. McCormick*, 136 F.Supp.2d 795, 802 (S.D. Ohio 2001) (concerning procedural component of bona fide error defense, principal may assign his agent "error-catching" procedures, but where the principal has an essential role concerning the activity at issue "an abdication of that responsibility necessarily destroys the effectiveness of the procedure itself"). With both interrogatories, in addition to contact information for the companies, Ms. Anchondo seeks information concerning how many putative class members received The Voicemail Message, as related to each particular creditor and as related to each particular telephone service company, so that she can avoid engaging in third party discovery with a company that has only a tangential relationship with ACA.

ACA refuses to provide any information responsive to Interrogatories Nos. 9 and 10. In addition to arguing that responding to these interrogatories would require ACA to violate the FDCPA, ACA argues that by the requests, Ms. Anchondo seek confidential information. ACA is stalling. The FDCPA's prohibition on disclosure to third parties does not apply to discovery in FDCPA class actions. *See*, *Kelly*, 2007 U.S. Dist. LEXIS 93651 at *9-10. Moreover, since very early in this lawsuit, Ms. Anchondo has offered to enter into a reasonably limited protective order with ACA and has asked ACA to propose a stipulated order. ACA has refused. In any event, it is highly unlikely that location information for these companies would be deserving of the protections imposed by a protective order. It is equally unlikely that the mere number of putative class members associated with each of these companies would merit a protective order.

Ms. Anchondo requests that ACA supplement its responses to Requests for Admission Nos. 1, 2, 3 and 4 and either admit or deny each request. Ms. Anchondo requests that ACA supplement its response to Interrogatory No. 5, 6, 9 and 10 and subpart (c) of Request for Production No. 3 and provide the requested information and documents.

### Requests Concerning the Identities of Key Witnesses

In Interrogatory No. 4, Ms. Anchondo asks ACA to identify its employees whose activities resulted in two Voicemail Messages left for her. In subpart (b) of Request for Production No. 3, Ms. Anchondo asks ACA to produce all documents concerning these activities. ACA identifies no one. It refuses to produce any documents. ACA argues that Interrogatory No. 4 is vague and that no ACA employee had any direct contact with Ms. Anchondo. It argues that Interrogatory No. 3 calls for the disclosure of confidential documents and would require it to violate the FDCPA.

ACA is obstructing Ms. Anchondo's access to key witnesses.

Interrogatory No. 4 is not vague. With Interrogatory No. 4, Ms. Anchondo employed precise language. ACA is not confused by the request as shown by its statement at the end of its response, where it states that no ACA employee had direct contact with Ms. Anchondo.

4

Responding to Request for Production No. 3 would not require ACA to disclose confidential documents or violate the FDCPA. The FDCPA's prohibition on disclosure to third parties does not apply to discovery in FDCPA class actions. *See, Kelly*, 2007 U.S. Dist. LEXIS 93651 at *9-10.

Ms. Anchondo understands that ACA utilized a telephone service to leave the two Voicemail Messages that were left for Ms. Anchondo. However, ACA must have had some communication with this company, so that it would know who to call and what message to leave. Ms. Anchondo seeks the identities of the ACA employees that participated in these communications. Ms. Anchondo intends to depose one or more of these employees to find out exactly how the process works. This information would help Ms. Anchondo establish numerosity under Rule 23, help her show commonality and typicality under the same rule and help her rebut ACA's affirmative defense of bona fide error. *See*, FRCP 23(a)(1), (2) and (3); *Johnson II*, 443 F.3d at 728; *Edwards*, 136 F.Supp.2d at 802.

In Interrogatory No. 11, Ms. Anchondo asks ACA for information about communications between ACA and the telephone service company that left two Voicemail Messages for Ms. Anchondo, where the communication concerned Ms. Anchondo, this lawsuit or the account that ACA was trying to collect from Ms. Anchondo. Specifically, Ms. Anchondo requests ACA identify the persons involved in these communications. In Interrogatory No. 12, Ms. Anchondo asks ACA to explain the process by which she received The Voicemail Message, including identifying all persons involved in this process. These persons are potential witnesses. These persons would likely have information concerning the central subject matter of this lawsuit: The Voicemail Message, how ACA utilizes The Voicemail Message as a collection tool and the basis for ACA's belief that The Voicemail Message complies with the FDCPA.

In Interrogatory No. 15, Ms. Anchondo asks ACA for information about communications between ACA and APX Alarm, the original creditor, where the communication concerned Ms. Anchondo, this lawsuit or the account that ACA was trying to collect from Ms. Anchondo. As part of Interrogatory No. 15, Ms. Anchondo requests that ACA identify the persons involved in these communications. In Request for Production No. 11, Ms. Anchondo asks ACA to produce all documents concerning these communications. These documents would show the persons involved in the communications. These persons are potential witnesses.

In ACA's responses to Requests for Admission Nos. 9 and 10, and again in its response to Interrogatories Nos. 13 and 14, ACA admits that it did not purchase Ms. Anchondo's alleged debt account from APX Alarm, has never owned the account and simply contacts with APX Alarm to perform collection activities for it. Thus, it is highly likely that communications between ACA and APX Alarm took place both during the time that it caused The Voicemail Message to be left for Ms. Anchondo and afterwards. Like with the persons whose identities are responsive to Interrogatories Nos. 11 and 12, the persons whose identities are responsive to Interrogatory No. 15 and whose names would appear on the documents responsive to Request for Production No. 11 would likely have information concerning the central subject matter of this

lawsuit: The Voicemail Message, how ACA utilizes The Voicemail Message as a collection tool and the basis for ACA's belief that The Voicemail Message complies with the FDCPA.

ACA refuses to identify a single person in response to Interrogatory No. 11. ACA refuses to identify a single person in response to Interrogatory No. 12. ACA refuses to identify a single person in response to Interrogatory No. 15. ACA refuses to produce any document responsive to Request for Production No. 11. ACA argues that privilege allows it to refuse to answer Interrogatories Nos. 11, 12 and 15. ACA argues that Request for Production No. 11 is not relevant and seeks disclosure of proprietary documents.

If ACA intends to stand on its privilege objection with respect to Interrogatories Nos. 11, 12 and 15, Ms. Anchondo requests that ACA produce a privilege log that includes all the information required under New Mexico law, so that Ms. Anchondo (and, possibly, the Court) can fairly weigh ACA's assertion of privilege. *See, Pina v. Espinoza*, 2001 NMCA 55, 130 N.M. 661, 29 P.3d 1062 (N.M. Ct. App. 2001); *Hartman v. Texaco, Inc.*, 1997 NMCA 32, 123 N.M. 220, 937 P.2d 979 (N.M. Ct. App. 1997). Ms. Anchondo notes that privilege is unlikely to apply here because the names and location information for the persons whose identities are sought in Interrogatories Nos. 11, 12 and 15 would not likely implicate attorney client communications or attorney work product.

Concerning ACA's argument that documents responsive to Request for Production No. 11 contain proprietary information, Ms. Anchondo is willing to hold these documents as confidential, pursuant to a reasonably limited protective order.

In the end, in ACA's responses to Ms. Anchondo's discovery requests, ACA reveal no names other than the name of ACA's CEO. Ms. Anchondo is not satisfied with only deposing Thomas Backal, ACA's CEO. Ms. Anchondo seeks to depose lower level ACA employees and ACA agents involved in the process which results in the leaving of The Voicemail Message, in addition to Mr. Backal. These persons will likely will have an understanding about the process that Mr. Backal might not share. These persons may be more willing to talk about specific details than ACA's CEO.

Ms. Anchondo requests that ACA supplement its response to Interrogatories Nos. 4, 11, 12 and 15, and identity the witnesses whose names and location information are sought in these requests. Ms. Anchondo requests that ACA supplement its response to subpart (b) of Request for Production No. 3 and produce all documents that concern the activities that resulted in The Voicemail Message being left for her. Ms. Anchondo requests that ACA supplement its response to Request for Production No. 11 and produce all responsive documents.

### Requests Concerning ACA's Defenses, Including Its Defense Predicated on Its Purported Belief that The Voicemail Message Complies with the FDCPA

In Interrogatory No. 16, Ms. Anchondo asks ACA to describe its policies for avoiding the

FDCPA violations that she alleges in this lawsuit. Specifically, Ms. Anchondo requests that ACA describe its policies and procedures for identifying itself as the caller in telephone messages it leaves or causes to be left with debtors and its policies and procedures for stating that the message is from a debt collector. *See*, 15 U.S.C. §§ 1692d(6) and 1692e(11). In Request for Production No. 12, Ms. Anchondo asks ACA to produce all documents that concern these policies, limited to documents that show policies in place during the Class Period. In Request for Production No. 13, Ms. Anchondo asks ACA to produce all documents that concern its procedures for determining whether telephone messages that it leaves for consumer debtors comply with the FDCPA, subject to the same limitation given in Request for Production No. 12.

ACA's response to Interrogatory No. 16 is evasive. ACA does not address the two specific requirements of the FDCPA at issue in this lawsuit: §§ 1692d(6) and 1692e(11). Rather, ACA talks generally about the different *methods* it employs in training its employees to comply with the FDCPA generally, avoiding all talk about the substantive *content* of this training. Also, ACA refuses to produce any documents responsive to Requests for Production Nos. 12 and 13, which would show the substantive content of its relevant compliance policies. ACA argues that these documents contain proprietary information.

ACA is stalling. Since very early in this lawsuit, Ms. Anchondo has offered to enter into a reasonably limited protective order with ACA. Ms. Anchondo is willing to hold as confidential any documents produced in response to Requests for Production Nos. 12 and 13, pursuant to a reasonably limited protective order.

Ms. Anchondo requests that ACA supplement its response to Interrogatory No. 16 and specifically describe the content of its policies in regard to §§ 1692d(6) and 1692e(11). If ACA's policy does not include any substantive content concerning these two FDCPA provisions, Ms. Anchondo requests that ACA so state. Ms. Anchondo requests that ACA supplement its responses to Requests for Production Nos. 12 and 13 and produce all responsive documents.

In subpart (a) of Request for Production No. 3, Ms. Anchondo asks ACA to produce all documents concerning the creation, editing, approving or authorizing of The Voicemail Message. ACA refuses to produce any documents. ACA argues that Request for Production No. 3 calls for disclosure of proprietary documents and would require it to violate the FDCPA.

Responding to Request for Production No. 3 would not require ACA to violate the FDCPA. The FDCPA's prohibition on disclosure to third parties does not apply to discovery in FDCPA class actions. *See*, *Kelly*, 2007 U.S. Dist. LEXIS 93651 at *9-10. ACA's argument that the documents responsive to subpart (a) of Request for Production No. 3 contain proprietary information is moot. Ms. Anchondo is willing to hold as confidential any documents produced in response to subpart (a) Request for Production No. 3, pursuant to a reasonably limited protective order. Ms. Anchondo requests that ACA supplement its response to subpart (a) Request for Production No. 3 and produce all documents concerning the creation, editing, approving or authorizing of The Voicemail Message.

In Interrogatory No. 18, Ms. Anchondo asks ACA to describe any legal research that it performed, or had others perform, concerning whether its voicemail messages comply with the FDCPA. As part of this request, Ms. Anchondo asks ACA to identify any attorneys that undertook this research. In Request for Production No. 14, Ms. Anchondo asks ACA to produce the documents that show this legal research.

ACA refuses to provide a substantive answer to Interrogatory No. 18. ACA refuses to produce any documents in response to Request for Production No. 14. ACA attempts to hide behind privilege.

It is well established that privilege is not absolute. "The party seeking to assert a privilege has the burden of establishing its applicability." *Motley v. Marathon Oil Company*, 71 F.3d 1547, 1550 (10th Cir. 1995). "A litigant may not use the attorney client privilege as both a sword and a shield, disclosing only those communications which are beneficial to the litigant's defense." *Kansas Food Packers v. Corpak*, No. 99-1418, 2000 U.S. Dist. LEXIS 19813 at *7 (D. Kan. Oct. 12, 2000).

Privilege may "yield in a proper case, where strong public policy requires disclosure." *Id.* at *6, *quoting, Leucadia, Inc. v. Reliance Insurance Company*, 101 F.R.D. 674, 679 (S.D. N.Y. 1983). "[T]he policy of the privilege is to protect confidential attorney-client relationships only to the extent that the injury the relationship would suffer from disclosure is greater than the benefit to be gained thereby." *Hearn v. Rhay*, 68 F.R.D. 574, 582 (E.D. Wash. 1975).

Here, ACA cannot claim privilege because it has placed its legal research concerning the legality of its voicemail messages at issue. A party waives attorney client privilege "when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case." *Frontier Refining Inc. v. Gorman-Rupp Company, Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). The Tenth Circuit's standard for this at issue exception is more liberal than the standard used by some other circuits. Other circuits find waiver of the privilege "if, and only if, the litigant directly puts the attorney's advice at issue in the litigation." *Id., citing, Rhone-Poulenc Rorer Inc. v. Home Indemnity Company*, 32 F.3d 851, 863-64 (3d Cir. 1994). However, the Tenth Circuit allows waiver of privilege under the at issue exception where a party proves up only three elements:
> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.

*Frontier Refining Inc.*, 136 F.3d at 701, *quoting, Hearn*, 68 F.R.D. at 581. "If a party asserts as an essential element of his defense reliance upon the advice of counsel, the party waives the privilege with respect to all communications, whether written or oral, to or from counsel concerning the transactions for which the advice was sought." *Kansas Food Packers*, 2000 U.S. Dist. LEXIS 19813 at *8. The at issue exception applies to the attorney client privilege and to

8

the attorney work product privilege.
> [A] litigant cannot use the work product doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging an assertion.

*Frontier Refining Inc.*, 136 F.3d at 704.

The flagship case concerning the at issue exception is *Hearn v. Rhay, supra*. In *Hearn*, the federal district court for the Eastern District of Washington considered whether privilege is waived where the defendant – a prison facility – consulted with the state attorney general. The consultations concerned the legality of confinement in the prison's mental health unit. The plaintiff challenged the constitutionality of this confinement. The prison raised the affirmative defense of qualified immunity. This defense required the prison to show that it acted in good faith. 68 F.R.D. at 577. The *Hearn* court found that the prison waived any privilege that it may have had by asserting the good faith defense.
> [D]efendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to "defend" against defendants' affirmative defense, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights.

*Id.* at 581. The defendant's good faith defense caused the prison's consultations with its lawyers to be part of "the controversy itself." The court held that "to deny access to [the legal consultations] would preclude the court from a fair and just determination of the issues." *Id.* at 582.
> To allow assertion of the privilege in this manner would pervert its essential purpose and transform it into a potential tool for concealment of unconstitutional conduct behind a veil of confidentiality. Under these circumstances, the benefit to be gained from disclosure far outweighs the resulting injury to the attorney-client relationship. The privilege should not apply.

*Id.*

Here, ACA has asserted the affirmative defense of bona fide error under the FDCPA, a defense very much like the good faith defense raised by the prison in the *Hearn* lawsuit. Docket No. 3, answer, ¶ 34 (alleging bona fide error defense). The bona fide error defense is provided for in the statute:
> A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). In the Tenth Circuit, for a debt collector defendant to prevail under the bona fide error defense, the debt collector must show "that the violation was (1) unintentional,

(2) a bona fide error, and (3) made despite the maintenance of procedures reasonably adapted to avoid the violation." *Johnson v. Riddle*, 305 F.3d 1107, 1121 (10th Cir. 2002) (*"Johnson I"*) (quotations omitted). Mistakes of law can be considered a bona fide error. *Id.*

Applying these tenets to this lawsuit, to establish bona fide error, ACA must show (1) that it intended to comply with the FDCPA concerning The Voicemail Message, (2) that a reasonable mistake of law caused it to wrongfully believe that The Voicemail Message was compliant with the FDCPA and (3) that it maintained reasonable procedures specifically designed to prevent this error. Procedures for general FDCPA compliance training – the only FDCPA compliance work that ACA has revealed so far – are insufficient. *Johnson II*, 443 F.3d at 730 ("sending employees and staff to training seminars or subjecting employees and staff to compliance testing cannot shield an attorney for liability for legal errors"). Thus, if ACA neglected to conduct adequate legal research concerning the legality of The Voicemail Message, or if it relied on shoddy legal research, it cannot invoke the bona fide error defense.

Moreover, for the bona fide error defense to apply here, ACA must show that its legal research concerning the legality of the Voicemail Message was ***objectively*** reasonable. *See*, *Johnson I*, 305 F.3d at 1124-25 (procedural component of bona fide error defense applies to alleged mistakes of law); *Johnson II*, 443 F.3d at 729 (procedure component of FDCPA's bona fide error defense is an objective test that "involves a two-step inquiry: first, whether the debt collector maintained – i.e., actually employed or implemented – procedures to avoid errors; and, second, whether the procedures were reasonably adapted to avoid the specific error at issue"). Where the alleged bona fide error "involves a mistake of law, whether the debt collector's mistake was bona fide will turn on the debt collector's due diligence practices." *Johnson II*, 443 F.3d at 729. For ACA to prevail on its bona fide error defense, it must show that it employed a process that allowed it to adequately consider all relevant case law and that it fairly interpreted the language of the FDCPA itself. *See*, *Nielsen v. Dickerson*, 307 F.3d 623 (7th Cir. (bona fide error defense not available to debt collector that acted contrary to published federal court opinion); *Hulshizer v. Global Credit Services, Inc.*, 728 F.2d 1037, 1038 (8th Cir. 1984) (bona fide error defense rejected where "the language of the statute [was] unambiguous and [the debt collector's] disregard of that language [was] undisputed"). *Compare*, *Watkins v. Peterson Enterprises, Inc.*, 57 F.Supp.2d 1102, 1107 (E.D. Wash. 1999) (debt collector prevailed under bona fide error defense because it showed its legal practices "were accepted by courts throughout the state"). *See also*, Janet Flaccus, *Fair Debt Collection Practices Act: Lawyers and the Bona Fide Error Defense*, 2001 ARK. L. NOTES 95 (2001) (arguing that the bona fide error defense should only be available where the law is unsettled, but not where it is reasonably clear). A debt collector that ignores the relevant case law because the case law does not agree with its practice is not entitled to claim bona fide error. *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1113 (7th Cir. 2008) (debt collector's showing that "it attempted to keep itself informed about the law" but where it failed to conduct research on the most relevant law "is not enough . . . to support the bona fide error defense").

By raising bona fide error, ACA has made its legal research concerning the legality of The

10

Voicemail Message part of the controversy in this case. Ms. Anchondo is entitled to information and documents concerning this research, despite ACA's privilege objections. Ms. Anchondo has no way to rebut ACA's bona fide error defense but through discovery into ACA's legal research and analysis, which can be found only in ACA's internal documents and within its exclusive knowledge. Ms. Anchondo requests that ACA supplement its response to Interrogatory No. 18 and Request for Production No. 14 and provide the requested information and documents.

In Interrogatory No. 19, Ms. Anchondo asks for information about training sessions or conferences attended by ACA employees or officers where "any portion of the conference, training session or industry forum concerned leaving telephone messages for consumer debtors." This information is clearly relevant to ACA's bona fide error defense.

Nevertheless, ACA provides an evasive answer. It states that Mr. Backal attended conferences – without providing Ms. Anchondo the information she would need to identify the conferences – but it does not provide any information concerning whether any portion of the conferences concerned leaving telephone messages for consumer debtors.

Ms. Anchondo requests that ACA supplement its response to Interrogatory No. 19 and provide, for each conference where any portion thereof concerned leaving telephone messages for consumer debtors, the information that Ms. Anchondo requested that would allow Ms. Anchondo to identify the conference attended by Mr. Backal, including the names of the persons who presented the relevant presentations.

In Interrogatory No. 21, Ms. Anchondo asks ACA to list the facts, witnesses and documents that support its affirmative defenses. ACA has raised 7 affirmative defenses, including bona fide error, an attack on Ms. Anchondo's suitability as a class representative, a claim of setoff based on the predicate APX Alarm account, a claim that ACA's agents acted "outside of the line and scope of their employment" and an allegation that Ms. Anchondo brought this lawsuit "in bad faith for the purpose of harassment." Docket No. 3, answer, ¶¶ 33-40. ACA's answer is wholly insufficient in light of these defenses. In full, ACA's response reads:
> Defendant believes that it is in full compliance with all applicable laws and as stated in its answer, Defendant is not liable for any actions of its agents or employees committed outside of the line and scope of their employment. Defendant has not yet determined who will be called as witnesses, but will timely supplement this information.

In ACA's response, it fails to provide any substantive information concerning its defenses, but simply parrots the defenses as already stated in its answer. Ms. Anchondo is left to guess concerning numerous factual matters. For example, what facts provide the basis of ACA's bona fide error – *i.e.*, what legal research or authority is it relying on to claim that The Voicemail Message complied with the FDCPA? What facts underlie ACA's attack on Ms. Anchondo's suitability as a class representative? How does ACA claim setoff based on the APX Alarm account, when it has admitted that it does not own the account? What facts does ACA rely on to

claim that ACA's agents acted "outside of the line and scope of their employment" and who are these agents? What is the factual basis for ACA's allegation that Ms. Anchondo brought this lawsuit "in bad faith for the purpose of harassment"?

ACA misunderstands its obligations under Rule 11. Per this rule, a defendant must only bring defenses that ""have evidentiary support." FRCP 11(B)(3). Ms. Anchondo requests that ACA supplement its response to Interrogatory No. 21 and provide the factual basis (including any known supporting witness and documents) for each affirmative defense. Alternately, ACA may choose to withdraw some of its affirmative defenses.

In Request for Production No. 10, Ms. Anchondo asks ACA to produce documents that show the nature of its interest in the APX Alarm account it tried to collect from Ms. Anchondo. ACA refuses. It argues that the request is not relevant, poses an undue burden and seeks disclosure of documents that contain proprietary information.

ACA made Request for Production No. 10 relevant when it raised its affirmative defense of setoff. *See*, Docket No. 3, answer, ¶ 37 (alleging setoff defense). Accordingly, Ms. Anchondo is entitled to discover whether ACA has any interest in the predicate account such as to provide ACA standing to seek setoff. *See*, *Capuano v. United States*, 955 F.2d 1427, 1430 (11th Cir. 1992) (claim of setoff not available to party that does not own debt). Request for Production No. 10 is not unduly burdensome. Documents that would show ACA's interest in a single account should be few. Concerning ACA's argument that these documents contain proprietary information, Ms. Anchondo is willing to hold the documents as confidential, pursuant to a reasonably limited protective order.

### Requests Concerning ACA's Net Worth

In Interrogatory No. 23, Ms. Anchondo asks ACA to state its current net worth and describe how it calculated this net worth figure. In Interrogatory No. 24, Ms. Anchondo asks ACA to provide information concerning each legal action in the last five years in which ACA produced financial statements or net worth information. ACA did not include these interrogatories in its discovery responses and thus did not provide any objections or responses.

In Request for Production No. 18, Ms. Anchondo asks ACA to produce documents that ACA utilized, referred to or consulted concerning the net worth figure responsive to Interrogatory No. 23. In Request for Production No. 19, Ms. Anchondo asks ACA to produce documents that show its net worth in the last three years. In Request for Production No. 20, Ms. Anchondo asks for documents that would show ACA's corporate structure in the last five years. These documents would help Ms. Anchondo determine if part of ACA's net worth resides with or has been transferred to other business entities. In Request for Production No. 21, Ms. Anchondo asks ACA to produce documents that show compensation to its board members and officers in the last five years. These documents would help Ms. Anchondo determine whether ACA hides net worth through extravagant compensation. In Request for Production No. 22, Ms. Anchondo asks ACA

to produce documents that show valuation of ACA's capital stock and/or goodwill in the last five years. *See, Wisneski v. Nationwide Collections, Inc.*, 227 F.R.D. 259, 261 (E.D. Pa. 2004) (for FDCPA class action purposes, a defendant's net worth includes equity, capital stock and goodwill). In Request for Production No. 23, Ms. Anchondo asks ACA to produce documents that govern the relationship between it and all other entities that operate under any trade name organized under ACA. These documents will help Ms. Anchondo determine whether ACA hides net worth by transfers to alter ego companies.

Ms. Anchondo has good reason to believe that net worth discovery will not be a straight forward process with ACA. According to documents filed with the Texas Secretary of State, ACA operates under at least five trade names including Alarm Debt Liquidation Group, Commercial Debt Liquidation Group, Debt Liquidation Group, Extermination Debt Liquidation Group and Property Debt Liquidation Group. ACA's CEO, Mr. Backal, is a director in numerous other business entities, including Alarm Payment Processing PC, DuBaHa, Inc. and Dubaha Security LLC, all which have the same address as ACA. Steven R. Dunn, the attorney representing ACA in this lawsuit, and whose office is located at ACA's address, is also a director for DuBaHa, Inc. and Dubaha Security LLC. Courts should act carefully to ensure that accurate net worth information is obtained where net worth is at issue. *See, e.g., Lockley v. Deere & Company a/k/a John Deere Company*, 933 F.2d 1378, 1388 (8th Cir. 1991).

Given the constitutional defenses raised by ACA, the stay of discovery caused by its motion to dismiss, and its discovery posture, including its absolute refusal to provide any net worth information or documents, Ms. Anchondo is concerned that ACA may be delaying resolution of this lawsuit in order to hide its assets.

ACA's objections concerning net worth discovery are not well taken. ACA argues that net worth documents are not relevant and contain proprietary information. It argues that Request for Production No. 19 is unduly burdensome and harassing. It argues that Request for Production No. 21 is over broad.

Because this lawsuit is a FDCPA class action, ACA's net worth is squarely at issue. Per the statute, class statutory damages recovery is limited to "the lesser of $500,000 or 1 per centum of the net worth of the debt collector." 15 U.S.C. § 1692k(a)(2)(B)(ii). Ms. Anchondo does not seek actual damages but limits her and putative class members' FDCPA recovery to statutory damages. *See*, Docket No. 1, complaint, ¶ 26. Because ACA's net worth determines class damages, a broader exploration of ACA's net worth is merited. Accordingly, Ms. Anchondo's net worth requests are not over broad, unduly burdensome or harassing.

Moreover, a majority of state and federal courts permit pretrial discovery of a defendant's net worth where net worth is at issue. *See, Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990) (collecting cases). The New Mexico federal district court is part of this majority. *See, Pedroza v. Lomas Auto Mall, Inc.*, No. 07-591, 2008 U.S. Dist. LEXIS 91733 at *6-7 (D. N.M. Nov. 10, 2008) (pretrial discovery of net worth allowed unless claim that

13

puts net worth at issue is "spurious"). Ms. Anchondo is entitled to obtain net worth information at this time because "to deny discovery of net worth until plaintiff can make a showing of a prima facie case at trial would only lead to delay and confusion, while plaintiff reviews the information for the first time." *Mid Continent Cabinetry, Inc.* at 152.

Here, Ms. Anchondo's FDCPA claim against ACA is not spurious. The Court has already rejected ACA's effort to dismiss the lawsuit. *See*, Docket No. 35, order, *reported at* 2008 U.S. Dist. LEXIS 90654. Ms. Anchondo's claims concern ACA's failure to identify itself or state that the caller is a debt collector in the voicemail messages it leaves for consumer debtors. Numerous courts have held that nearly identical voicemail messages left by debt collectors violate the FDCPA as a matter of law. *See*, *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v NCO Financial Systems, Inc.*, 424 F.Supp.2d 653 (S.D. N.Y. 2006); *Leyse v. Corporate Collection Services, Inc.*, No. 03-CV-8491, 2006 U.S. Dist. LEXIS 67719 (S.D. N.Y. Sept. 18, 2006); *Belin v. Litton Loan Servicing*, No. 8:06-CV-760, 2006 U.S. Dist. LEXIS 47953 (M.D. Fla. July 14, 2006); *Costa v. National Action Financial Services*, No. S-05-2084, 2007 U.S. Dist. LEXIS 93230 (E.D. Cal. Dec. 19, 2007); *Masciarelli v. Richard J. Boudreau and Associates, LLC*, 529 F.Supp.2d 183 (D. Mass. 2007); *Ramirez v. Apex Financial Management, LLC*, 567 F.Supp.2d 1035 (N.D. Ill. 2008); *Thomas v. Consumer Adjustment Company, Inc.*, 579 F.Supp.2d 1290 (E.D. Mo. 2008); *Edwards v. Niagara Credit Solutions, Inc.*, ___ F.Supp.2d ___, 2008 U.S. Dist. LEXIS 95040 (N.D. Ga. 2008). *See also*, *Joseph v. J. J. MacIntyre Companies LLC*, 281 F.Supp.2d 1156, 1162-64 (N.D. Cal. 2003).

The Court has set a settlement conference in this lawsuit for April 2, 2009, with the parties to exchange settlement demands and offers prior to the conference. *See*, Docket No. 40, order. Without reliable net worth information and documents, it will be impossible for Ms. Anchondo to realistically and effectively discuss settlement.

Ms. Anchondo is sensitive to the proprietary nature of ACA's net worth. Since very early in this lawsuit, Ms. Anchondo has offered to enter into a reasonably limited protective order with ACA in order to receive net worth documents. Ms. Anchondo has asked ACA to propose a stipulated order. ACA has refused. Ms. Anchondo remains willing to hold as confidential any net worth information or documents, pursuant to a reasonably limited protective order.

### Requests Concerning Documents that ACA Agrees Are Discoverable

ACA has not produced a single document in response to Ms. Anchondo's requests for production. In response to many of the requests for production – Requests for Production Nos. 1, 2, 4, 5 and 8 – ACA states:
> if any non-privileged documents are specifically referred to in said discovery responses, Defendant will produce same at a mutually agreeable time in Defendant's counsel's office or upon request will make photocopies for Plaintiff's counsel.

In response to Request for Production No. 7, ACA states "Defendant is attempting to locate and

14

obtain any responsive, non-privileged documents and will produce same."

In Ms. Anchondo's discovery requests, she specified a method for production (emphasis in original):
> **When asked to "produce" a document, it means to produce a copy of the document at the office of Plaintiff's counsel.** Plaintiff's counsel reserves the right to right to review the original.

Ms. Anchondo requests that ACA comply with her request and mail her counsel copies of all documents that are responsive to her requests for production.

Ms. Anchondo notes that ACA appears to be limiting the documents that it will produce.

First, ACA states that it will produce only non-privileged documents. Ms. Anchondo requests that ACA state in writing whether it is withholding any responsive documents on the basis of privilege. If so, Ms. Anchondo requests that ACA provide a privilege log. *See*, *Securities and Exchange Commission v. Lewis (In re Motion for Protective Order for Subpoena Issued to the Stein Law Firm)*, No. 05-CV-33, 2006 U.S. Dist. LEXIS 29161 at *21-23 (D. N.M. Feb. 10, 2006) (privilege objection waived if not adequately supported).

Second, concerning Requests for Production Nos. 1, 2, 4, 5 and 8, ACA appears to be limiting its responses to documents that it specifically referred to in its earlier responses. This limitation is not contained in the requests themselves. This limitation is improper as it allows ACA to reveal only the documents that it believes is helpful to it, but hide any documents that are less than helpful. For at least the last sixty years, the discovery rules require a party to disclose all relevant documents, subject to a few limited exceptions, not just the documents it wants to disclose. *See*, FRCP 26; *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("discovery rules are to accorded a broad and liberal treatment"). Under the rules, discovery requires disclosure "toward the end that the merits of the case may be expeditiously ascertained for the purpose of promoting either a fair settlement or a fair trial; it is not a game of tactical harassment or obstruction." *Central National Bank in Chicago*, 445 N.E.2d at 1182. Ms. Anchondo requests that ACA state in writing whether it is withholding any responsive documents based on its statement that it will only produce documents that "are specifically referred to in said discovery responses."

### Request Concerning ACA's Agreements with Any Relevant Telephone Service Company and with APX Alarm

In Request for Production No. 6, Ms. Anchondo asks ACA to produce agreements between it and any telephone service company that left The Voicemail Message during the Class Period, where the agreement was in effect during this time. In Request for Production No. 9, Ms. Anchondo asks ACA to produce the agreement between it and APX Alarm. ACA refuses to produce any agreements. It argues that the agreements are not relevant and contain proprietary information.

The agreements are relevant. The agreements with the telephone service companies would likely

set forth the parameters under which the telephone service companies left The Voicemail Message, including the scope of these companies' discretion concerning The Voicemail Message and whether ACA must first approve The Voicemail Message. The agreement with APX Alarm would likely set forth the parameters under which ACA is allowed to collect on APX Alarm's debt accounts, including the scope of APX Alarm's participation in the creation or approval of The Voicemail Message. This information will help Ms. Anchondo rebut ACA's affirmative defense that ACA's agents acted "outside of the line and scope of their employment." *See*, Docket No. 3, answer, ¶ 38 (alleging scope of employment defense).

Concerning ACA's argument that these agreements contain proprietary information, Ms. Anchondo is willing to hold any agreements as confidential, pursuant to a reasonably limited protective order.

## Other Matters

Concerning ACA's responses to the interrogatories, ACA failed to provide verification of the responses. The rules clearly require a signed and notarized verification. *See*, FRCP 33(b)(1) and (2). Ms. Anchondo request that ACA provide a verification form signed by Thomas Backal and duly notarized, because, per ACA's response to Interrogatory No. 1, Mr. Backal provided the responses.

Please find following a proposed motion and order to enlarge page limits for Ms. Anchondo's motion to compel, which she intends to file unless the discovery disputes can be resolved. Please let me know if ACA approves the form of the motion and order.

Please feel free to telephone me to discuss any of these issues.

Truly yours,

Rob Tremen

RT/

cc:   Douglas G. Schneebeck (via Fax ONLY to 848-1882)
      Rand Bragg (via Fax ONLY to (312) 372-1673)