IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**ELSA ANCHONDO, on behalf of herself and
all others similarly situated,**

      **Plaintiff,**

**v.**                                                     **CIV 08-0202 RB/WPL**

**ANDERSON, CRENSHAW, & ASSOCIATES,
L.L.C.,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion for Award of Attorney Fees and Costs (Doc. 78), filed on November 4, 2009. Jurisdiction arises under 28 U.S.C. § 1331. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, Plaintiff's Motion for Award of Attorney Fees and Costs is granted in part.

**I.    Background.**

On February 26, 2008, Plaintiff Elsa Anchondo filed this lawsuit as a class action, asserting violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA") and the New Mexico Unfair Practices Act. In her Complaint, Ms. Anchondo averred that she had purchased a home alarm system from APX Alarm Security Solutions, Inc. When the alarm system failed to work properly, Ms. Anchondo refused to pay the monthly service fees. APX Alarm retained Defendant Anderson, Crenshaw & Associates (hereinafter "ACA"), a debt collector, to collect the alleged debt from Ms. Anchondo.

On December 15, 2007 and December 26, 2007, ACA left the following two, identical prerecorded messages on Ms. Anchondo's answering machine:

> "Hello. This message is for Elsa Anchondo. This is not a sales call. You have an important matter with our company that deserves your immediate attention. Please call me back as soon as possible at the following number: 866-400-3550. When returning this call, please refer to

>reference number 423635. If you wish to speak to someone now regarding your account, press zero. Thank you.

ACA did not identify itself or state that the communication was an attempt to collect a debt. Ms. Anchondo did not respond to the message.

In its Answer, ACA asserted a Counterclaim for Declaratory Judgment, and Notice of Constitutional Challenge to the FDCPA. (Doc. 3.) Ms. Anchondo moved to dismiss the counterclaim and the United States of America was permitted to intervene in support of the constitutionality of the FDCPA. (Docs. 9 and 19.) Additionally, ACA filed a motion to dismiss on the grounds that (1) the message at issue was not a "communication," as defined by the FDCPA, (2) the FDCPA is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment, and (3) the FDCPA unreasonably burdens Defendant's exercise of commercial speech protected under the First Amendment.

On October 27, 2008, the Court granted Ms. Anchondo's motion to dismiss the counterclaim on the ground that the counterclaim "appear[ed] to be a procedural tactic" and a motion for summary judgment would constitute a more appropriate procedure. (Doc. 34.) On October 28, 2008, the Court denied ACA's motion to dismiss, holding that Ms. Anchondo had presented sufficient allegations to make a prima facie case that ACA violated her rights under the FDCPA by failing to identify itself or state that the message was left on her answering machine as an attempt to collect a debt. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 583 F.Supp.2d 1278, 1281 (D.N.M. 2008).

The parties proceeded with discovery. On January 26, 2009, Ms. Anchondo filed a motion to compel, (Doc. 47), which was granted in part and denied in part by United States Magistrate Judge William P. Lynch. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661 (D.N.M. 2009). On March 12, 2009, ACA filed a motion to compel, (Doc. 59), to which Plaintiff responded. (Doc. 64.)

On April 2, 2009, after a 5.5 hour settlement conference before Judge Lynch, the parties reached a settlement. (Doc. 66.)  All four counsel of record appeared at the settlement conference.

On July 22, 2009, the Court granted preliminary approval of the class action settlement and certified a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (3).  (Doc. 71.)  The class consists of "all persons with New Mexico phone numbers (505 or 575 area codes) who had a contract with Apex Alarms and who received one or more Voice Messages between February 26, 2007 and [July 22, 2009]." (Doc. 72.)

In the settlement agreement, ACA agreed to an injunction, to be included in the final order, prohibiting ACA "from leaving a recorded message during a telephone call to collect a debt unless the message: (1) identified the call as coming from ACA, a debt collector; and (2) states that the call is made in an attempt to collect a debt and any information obtained will be used for that purpose." (*See* Settlement Agreement, Doc. 70, Ex. A.)  Pursuant to the settlement, each of the sixty-seven class members will be paid $60 and $3,600 will be paid to Ms. Anchondo.  (*See* Settlement Agreement, Doc. 70, Ex. A.)  Additionally, the parties agreed to submit the issue of Ms. Anchondo's attorneys' fees and costs to the Court if an agreement to an amount could not be reached.  The parties have been unable to reach such an agreement.

In her Motion for Award of Attorney Fees and Costs, Ms. Anchondo requests attorneys' fees, gross receipts tax, and costs in the total amount of $73,046.51.  (Doc. 79.)  In response, ACA does not dispute that fees, applicable gross receipts tax, and costs may be awarded.  (Doc. 81 and 82.)  However, ACA contends that the requests are excessive and a total fee award in the neighborhood of $25,000 would be appropriate.  (Doc. 81 and 82.)  On December 10, 2009, counsel for Ms. Anchondo submitted supplemental declarations seeking an additional $4,324.52 in fees, gross receipts tax, and costs incurred in litigating fees and costs, for a total requested award of $77,371.03.  (Doc. 87.)

**II.     Discussion.**

The FDCPA provides that debt collectors who have violated its provisions are liable for any actual damages sustained, statutory damages, and "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a). The determination of a reasonable attorney's fee is guided by calculation of the "lodestar" amount. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar amount is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar figure is the presumptively reasonable fee, and the court may adjust the lodestar amount upward or downward as necessary. *Blum v. Stenson*, 465 U.S. 886, 888 (1984).

The first step in calculating the lodestar amount is to determine the prevailing market rate in the community "for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895 n. 11; *see also Lippoldt v. Cole*, 468 F.3d 1204, 1224-25 (10th Cir. 2006). The community in question for this litigation encompasses New Mexico.

Mr. Rob Treinen is a partner at the Albuquerque-based law firm of Feferman, Warren & Treinen, P.A. Mr. Treinen requests compensation at the rate of $195.00 per hour. In support of this rate, Mr. Treinen submits a declaration stating that this is the fee he charges to clients on an hourly basis as well as contingency fee matters. Mr. Treinen has been practicing law since 1999. His law firm concentrates on representing consumers in lawsuits involving consumer fraud. Mr. Treinen's hourly rate of $195 also is reasonable, given the prevailing market rates in the community for an attorney with similar experience. Indeed, Defendant does not specifically object to Mr. Treinen's claimed hourly rate. Accordingly, the Court finds that $195 is a reasonable hourly rate for Mr. Treinen.

ACA does object to Mr. Bragg's claimed hourly rate of $465. Defendant's concerns are well-

founded. Despite the motion practice in this case, the claims and defenses were relatively straightforward. Unless the subject of the litigation is "so unusual or requires such special skills" that only an out-of-state attorney possesses, "the fee rates of the local area should be applied even when the lawyers seeking fees are from another area." *Lippoldt*, 468 F.3d at 1225 (citations omitted). While the record indicates that Mr. Bragg "wrote the book" on FDCPA cases, Plaintiff has not established that the subject of the litigation was so unusual that only an out-of-state attorney could present the case.

In 2004, Chief Judge Martha Vazquez determined that Mr. Richard Feferman, founding partner at Feferman, Warren & Treinen, P.A., appeared to have "reasonably comparable skill, experience, and reputation" as Mr. Bragg. *Graham v. Vengroff, Williams & Associates, Inc.*, CIV 02-0369 MV/RLP, Memorandum Opinion and Order at 9 (Doc. 92) (D.N.M. Nov. 4, 2004). In *Graham*, Chief Judge Vazquez set Mr. Bragg's rate at $250 per hour, which represented Mr. Feferman's 2004 rate of $225 per hour, plus a $25 per hour premium representing Mr. Bragg's experience in litigating FDCPA cases. *Id*.

Mr. Feferman's affidavit filed herein indicates that he has over thirty years of experience practicing law in New Mexico and that he has handled consumer cases full time for fifteen years. (Doc. 79-5.) Mr. Feferman avers that his current hourly rate is $275. (*Id.*) In that Mr. Feferman focuses on consumer law and practices in Albuquerque, the record establishes that the prevailing market rate for an experienced FDCPA class action attorney in New Mexico is $275 per hour. Although the Court recognizes that it is not bound to follow Chief Judge Vazquez's decision in *Graham*, the Court finds the approach therein to be well-reasoned. The Court will add an additional $25 per hour premium representing Mr. Bragg's extensive experience in litigating FDCPA cases. Accordingly, $300 per hour is the reasonable hourly rate for Mr. Bragg in this case.

After determining the reasonable hourly rates, the Court must determine whether counsel has exercised billing judgment with respect to the claimed number of hours worked. *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). Counsel must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude hours from his fee submission." *Hensley*, 461 U.S. at 434.

Mr. Treinen expended a total of 178.8 hours and Mr. Bragg expended a total of 81.2 hours in the representation of Ms. Anchondo. Mr. Bragg also requests $46 for time spent by his paralegal, Shannon Carter, at the rate of $115 per hour. ACA does not specifically object to this rate. In the absence of any evidence or argument to the contrary, the Court finds that $115 represents a reasonable hourly rate for Shannon Carter.

I have reviewed carefully the detailed billing records submitted by Mr. Treinen and Mr. Bragg. The billing records demonstrate that counsel exercised appropriate billing judgment and avoided duplicative efforts. I find that the number of hours expended on this litigation is reasonable.

The lodestar amount is calculated[1] in the following chart:

| Name | Hours | Rate | Fee |
| --- | --- | --- | --- |
| Rob Treinen | 178.8 | $195 | $34,866 |
| O. Randolph Bragg | 81.2 | $300 | $24,360 |
| Shannon Carter | .4 | $115 | $46 |
| Total | | | $59,272 |

---

[1] Mr. Treinen's interim statement indicates 163.7 hours multiplied by $195 per hour equals $32,521.50. (Doc. 79-3.) The Court's calculation results in a product of $31,921.50. Mr. Treinen's supplemental affidavit states that his total fee (178.8 hours multiplied by $195) is $35,466. (Doc. 87-3.) The Court's calculations indicate the product of 178.8 hours multiplied by $195 is $34,866. Mr. Treinen states that his claimed costs total $890.78. (Doc. 87-3.) The Court's calculation places the sum of Mr. Treinen's costs at $891.13. If Mr. Treinen can explain the discrepancies, the Court will consider amending this Memorandum Opinion and Order.

The Court finds that neither an upward nor a downward adjustment of the lodestar amount is necessary under the circumstances of this case. *Blum v. Stenson*, 465 U.S. at 888.

An award of New Mexico gross receipts tax at a rate of 6.875 percent on Mr. Treinen's fee is appropriate, which equates to $2,397.04. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (approving award of gross receipts tax on fee awarded to New Mexico counsel).

Mr. Treinen requests reimbursement of costs in the total amount of $890.78. Mr. Bragg has requested a total of $773.70 in costs. ACA complains about the copying costs, postage costs, and travel costs. While these costs may not be taxable under Fed. R. Civ. P. 54(b), such categories of costs may be awarded in cases involving a fee-shifting statute such as the FDCPA. *See Wiatt v. State Farm Ins. Companies*, 2008 WL 2229631 *2 (D.N.M. March 24, 2008) (No. CIV 07-0526 JB/KBM) (awarding travel costs under 28 U.S.C. § 1447(c)); *Kelley v. City of Albuquerque*, 2005 WL 3663515 *17 (D.N.M. Oct. 24, 2005) (No. CIV 03-0507 JB/ACT) (awarding cost of investigator in Title VII case); *Homans v. City of Albuquerque*, 264 F.Supp.2d 972, 979-80 ( D. N.M. 2003) (No. CIV 01-0917 MV/RLP) (awarding copying costs in civil rights action pursuant to 28 U.S.C. § 1920). The Court finds that the costs claimed by counsel for Ms. Anchondo are reasonable and appropriate. Therefore, $1,664.48 in costs are awarded.

**WHEREFORE,**

**IT IS ORDERED** that Plaintiff's Motion for Award of Attorney Fees and Costs (Doc. 78), filed on November 4, 2009, is **GRANTED IN PART.** Plaintiff is awarded attorneys' fees in the amount of $59,272, plus gross receipts tax of $2,397.04, and costs in the amount of $1,664.48, for a total award of $63,333.52.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**