# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ELSA ANCHONDO, on behalf of herself and
all others similarly situated,

       Plaintiff,

v.                                                            CV 08-202 RB/WPL

ANDERSON, CRENSHAW & ASSOCIATES,
LLC,

       Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Elsa Anchondo brought a putative class action against Anderson, Crenshaw & Associates, LLC ("ACA") for violating the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq., and the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-1 et seq. (Doc. 1.) After completing some discovery, the parties reached a settlement, which included a $3,600 payment to Anchondo as the class representative and $60 to each class member, injunctive relief to prevent ACA from engaging in the conduct that prompted the lawsuit, and Anchondo's attorney's fees and costs. (*See* Doc. 70, Ex. 1 at 2.) After appropriate notice to the class, the Court approved the settlement, awarded attorney's fees and costs, and dismissed the case with prejudice on December 16, 2009. (Doc. 89; Doc. 90.)

Normally, our story would end here, but ACA never paid the settlement amount or attorney's fees and costs. Anchondo submitted post-judgment discovery requests, the Court ordered that ACA respond to those requests (Doc. 108 at 5), and Anchondo filed a Motion for Sanctions when ACA did not comply with that Order. (Doc. 112.) After a hearing on the Motion, I ordered ACA to

provide responses to Anchondo's post-judgment discovery requests and further ordered ACA, Steven R. Dunn, counsel for ACA, and Thomas Backal, ACA's President and Chief Executive Officer, jointly and severally, to pay Anchondo the sum of $4,213.57 for the expenses incurred in connection with her Motion. (Doc. 119 at 4.) Subsequently, in October of 2010, ACA filed for bankruptcy. (Doc. 127.)

Anchondo has now filed a Second Motion for Sanctions, seeking sanctions not from ACA but from Dunn and Backal. (Doc. 131.) Anchondo seeks sanctions against Dunn and Backal for three separate acts that she claims justify sanctions: (1) they misrepresented during discovery whether ACA had insurance coverage for Anchondo's lawsuit; (2) they failed to timely submit the claims asserted in this lawsuit to the insurance carrier; and (3) they failed to pay the sanctions previously awarded against them. (Doc. 131 at 1; Doc. 132 at 3.) I have considered the briefing by the parties and the testimony given by Dunn and Backal on July 11, 2011, and I find that Dunn and Backal committed the three acts alleged by Anchondo and further attempted to deceive the Court. I therefore recommend that Anchondo's Second Motion for Sanction be granted and that Judge Brack award sanctions against both Dunn and Backal.

Anchondo devotes most of her energy to her claim that Dunn and Backal misrepresented during discovery whether insurance coverage existed for ACA. Anchondo served on ACA Request for Production No. 16, which sought production of any insurance policies that may cover any of the claims in her lawsuit. (Doc. 132, Ex. A at 4.) On January 6, 2009, ACA responded that it "believed no responsive documents exist." (*Id.* at 5.)

To prove that ACA intentionally provided a false response to this request, Anchondo has attached a declarations sheet for Policy Number 741-71-79, a Miscellaneous Professional Liability

Policy issued by National Union Fire Insurance Company of Pittsburgh, Pennsylvania to ACA. (Doc. 132, Ex. B at 1.) The declarations sheet shows that ACA had a claims made policy in effect from April 20, 2007 to April 20, 2008 with limits of liability of $500,000 for each wrongful act/aggregate with a retention of $15,000 per wrongful act. (*Id.*) Even though Anchondo's lawsuit was filed on February 26, 2008 (Doc. 1) and ACA was served with process on February 29, 2008 (Doc. 2), within the term of the policy, ACA did not report the claim to National Union until May 27, 2010, more than two years after the policy's termination. (Doc. 132, Ex. C at 3.) This failure to timely report Anchondo's claim was the reason National Union gave when declining to provide coverage to ACA under the policy. (*Id.* at 3-4.)

Rule 26 has long allowed the discovery of insurance coverage, and in 1993 information about insurance coverage became the subject of mandatory initial disclosure. FED. R. CIV. P. 26(a)(1)(A)(iv); 8 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2010 (3d ed. 2011). The purpose behind the disclosure of insurance coverage is to provide information to allow counsel to make a "realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." FED. R. CIV. P. 26(b)(2) cmt. (1970).

ACA's response to Request No. 16, that there is no insurance coverage for Anchondo's claim, is contradicted by overwhelming evidence. First, it is contradicted by the National Union declarations sheet and the denial of coverage letter, which conclusively establish that ACA had insurance coverage with National Union when Anchondo's lawsuit was filed. (Doc. 132, Exs. B & C.)

Second, ACA's response to Request No. 16 is contradicted by ACA's own prior statement. On May 13, 2008, ACA made its initial disclosures under Rule 26. (Doc. 132, Ex. D.) At that time

3

ACA disclosed that it "has in place a general errors and omissions policy" to provide coverage for Anchondo's claims. (*Id.* at 3.)

Backal and Dunn tried to explain the discrepancy between the response and the initial disclosure by claiming that ACA's initial disclosure about insurance coverage was not correct. Dunn testified that he asked Backal whether there was insurance coverage for Anchondo's claim, and that Backal told him there was no insurance coverage. (Doc. 142 at 15-19.) Backal testified that there were several times that ACA's insurance coverage lapsed due to non-payment of premiums, and when Dunn asked him about insurance coverage he told him that ACA had no insurance coverage. (*Id.* at 37, 40.) Dunn testified that he made an error in stating in the initial disclosures that ACA had insurance coverage, although he could not explain how the error occurred. (*Id.* at 11, 15-19.) If the National Union policy had been canceled for non-payment of premiums on several occasions, as Backal claimed, there would be documentary evidence (*i.e.*, notices of cancellation and/or reinstatement) to support this fact. Backal made no attempt to provide any documents to support his testimony that he believed that the policy was cancelled for non-payment.[1]

Backal's Response to Anchondo's Motion contains the third contradiction about whether ACA had insurance in place. First, Backal states that he "mistakenly thought Crenshaw [ACA] did not have insurance coverage[.]" (Doc. 135 at 1.) Then, on the very next page, Backal states that he "made an honest mistake in believing errors and omissions coverage, if any, was in place for the claims made by Plaintiff." (*Id.* at 2.) Either ACA had insurance coverage when the suit was filed or it did not, but Backal in his Response cannot make up his mind which is correct.

---

[1] This is not the first time this has occurred. At the hearing on the first Motion for Sanctions, Backal failed to provide any documents from Pepperwood Partners or Security Acceptance, LLC to support his claim that those documents precluded ACA from filing discovery responses. (Doc. 119 at 2-3.)

Most importantly, ACA's response to Request No. 16 is contradicted by testimony that Backal gave under oath on June 16, 2010, at the hearing on the first Motion for Sanctions. At that hearing, Backal testified that ACA had an insurance policy to provide coverage from April 20, 2010 to April 20, 2011. (Doc. 143 at 36-37.) He stated that he was not sure it was in force on June 16, 2010 because he did not believe that the monthly payment had been made. (*Id.* at 36.) Backal further testified that ACA had insurance with the same company that was renewed every year, and he believed that a policy was in place in all of 2008 and 2009. (*Id.* at 41-42.) Backal never testified that the policy had been canceled for non-payment of premium in 2008 or 2009.

Backal claims that it was not in ACA's best interest to misrepresent its insurance coverage and that, because the retention on the policy was $15,000, it made economic sense for ACA to turn over Anchondo's claims to the insurance company. (Doc. 135 at 2; Doc. 142 at 47.) I cannot give much credit to this after-the-fact argument. Wouldn't it have made economic sense for ACA to check to see if it had insurance coverage, instead of assuming it did not? Parties often do things in litigation that do not make economic sense, such as being uncooperative during the discovery process, which increases the attorney's fees claimed by the opposing party. *See Johnson v. Kakvand*, 192 F.3d 656, 661-62 (7th Cir. 1999).[2] Given the overwhelming evidence that ACA was insured and that Backal and Dunn misrepresented this fact, Backal's economic argument is unpersuasive.

---

[2] Not notifying the insurer is consistent with other hyper-aggressive actions ACA took in this litigation: (1) not content to merely deny wrongdoing, ACA filed a counterclaim for declaratory relief and notice of constitutional challenges on Due Process and First Amendment grounds, and subsequently filed a motion to dismiss on the merits and on Due Process and First Amendment grounds (Doc. 3; Doc. 20); (2) ACA resisted providing discovery, forcing Anchondo to file a motion to compel (Doc. 47; Doc. 61); (3) ACA vigorously contested Anchondo's attorney's fees and costs at both the district and appellate levels, and raised objections that the Tenth Circuit described as "meritless[,]. . . . unusual[,] . . . not supported by a single on-point authority, and . . . . facially implausible . . . ." *Anchondo v. Anderson, Crenshaw & Assoc., L.L.C.*, 616 F.3d 1098, 1103, 1104, 1106 (10th Cir. 2010); and (4) ACA refused to comply with a court order to respond to post-judgment discovery requests, prompting the first Motion for Sanctions. (Doc. 112.)

Anchondo's second claim seeks sanctions against Backal and Dunn because they failed to timely submit her lawsuit to National Union. (Doc. 131 at 1.) The National Union policy is a claims made policy, which provides coverage only when, "during the policy period, an insured becomes aware of and notifies the insurer of either claims against the insured or occurrences that might give rise to such a claim." *LaForge v. Am. Cas. Co. of Reading, Pa.*, 37 F.3d 580, 583 (10th Cir. 1994). A claims made policy "differs significantly from an 'occurrence' policy, in which coverage attaches automatically whenever a covered occurrence takes place within the effective dates of the policy." *Id.* It is undisputed that National Union declined to provide coverage because ACA did not timely report Anchondo's claim. (Doc. 132, Ex. C at 3-4.) Backal and Dunn never explained why demand was not made on National Union until May 27, 2010.

Finally, Anchondo seeks sanctions against Backal and Dunn because they have failed to pay the prior award of sanctions against them. (Doc. 132 at 3). Backal and Dunn admitted that they had not paid the sanctions awarded. (Doc. 142 at 27-28, 39-40.) They testified that they are financially unable to pay the sanctions, citing a variety of adverse events in their lives. (*Id.*) Yet, neither Backal nor Dunn provided any documents to support their defense of inability to pay. *See White v. Gen. Motors Corp., Inc.*, 908 F.2d 675, 685 (10th Cir. 1990) (holding that when a party claims inability to pay a sanction, the burden is on that party to produce evidence of his financial status).

Anchondo is somewhat vague when identifying the source of the court's power to impose sanctions on Backal and Dunn. She argues that Rule 37(b)(2)(A) allows the court to impose sanctions against "a party's officer, director, or managing agent." (Doc. 132 at 3.) While this is true, Anchondo conveniently ignores the part of the Rule that states that sanctions may be imposed only when a party's officer, director or managing agent "fails to obey an order to provide or permit

6

discovery . . . ." FED. R. CIV. P. 37(b)(2)(A). Nowhere in her Motion does Anchondo identify a court order directing Backal or Dunn to provide or permit discovery that they failed to obey.

A district court has discretion to sanction a party or an attorney who abuses the judicial process, perpetrates a fraud on the court, or fails to comply with local or federal procedural rules, and such authority is both statutory and inherent. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50-51 (1991); *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (citations omitted). The inherent power of the court extends to a full range of litigation abuses and reaches conduct both before the court and beyond the court's confines. *Chambers*, 501 U.S. at 46, 57; *see also Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 591-92 (7th Cir. 2008). When there is bad faith conduct in the course of litigation that can be adequately sanctioned under the Federal Rules of Civil Procedure, the court should ordinarily rely on the Rules rather than its inherent power. *Chambers*, 501 U.S. at 50; *In re Courtesy Inns, Ltd., Inc.*, 40 F.3d 1084, 1089 (10th Cir. 1994) (citation omitted). However, if the court determines that the Rules do not provide an adequate sanction, the court may rely on its inherent power. *Chambers*, 501 U.S. at 50; *Courtesy Inns, LTD., Inc.*, 40 F.3d at 1089 (citation omitted).

A district court also has inherent power to sanction non-parties for bad faith conduct. *Manez*, 533 F.3d at 585; *Courtesy Inns*, 40 F.3d at 1089. A court may sanction a non-party corporate officer who acts improperly on behalf of a corporate defendant and who attempts to avoid sanctions by hiding behind the corporate veil. *Courtesy Inns*, 40 F.3d at 1089-90; *Helmac Prods. Corp. v. Roth (Plastics) Corp.*, 150 F.R.D. 563, 568 (E.D. Mich. 1993). However, the court must be careful to limit the scope of its inherent powers and not sanction non-parties who have only a minor degree of involvement with the litigation. *Helmac*, 150 F.R.D. at 568. The court may use its inherent powers

7

to sanction a non-party who "(1) ha[s] a substantial interest in the outcome of the litigation and (2) substantially participate[s] in the proceedings in which he interfered." *Id.*; *see also Bartos v. Pennsylvania*, No. 1:08-CV-0366, 2010 WL 1816674, at *7 (M.D. Pa. May 5, 2010) (citation omitted); *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 259 F.R.D. 568, 584 (M.D. Fla. 2009) (citation omitted), *aff'd in part, quashed in part*, No. 6:07-cv-0222-Orl-35KRS, 2009 WL 5606058 (M.D. Fla. Nov. 16, 2009).

It is appropriate to proceed under the court's inherent powers because the sanctions available under the Federal Rules of Civil Procedure are not adequate. Rule 26(g)(3) would allow sanctions to be imposed on ACA and Dunn for failing to make a reasonable inquiry into the truth of the response to Request No. 16. *See* FED. R. CIV. P. 26(g)(3); *Bernal v. All Am. Inv. Realty, Inc.*, 479 F. Supp. 2d 1291, 1334 (S.D. Fla. 2007) (finding sanctions appropriate where neither defendant nor attorney reviewed records to ascertain whether corporations had gross revenue of $500,000 per year). However, Rule 26(g)(3) would not allow imposition of sanctions on Backal for failing to make a proper inquiry and also would not address Backal and Dunn's failure to submit the claim to National Union or their false testimony at the 2011 hearing.

In general, sanctions are intended to serve one or more of the following purposes: (1) compensating innocent parties injured by a discovery violation; (2) punishing a party who violates his obligations; (3) deterring others from committing similar violations; and (4) streamlining court dockets and facilitating case management. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *White*, 908 F.2d at 683. The court's inherent power to sanction litigation misconduct authorizes the court to fashion sanctions as severe as dismissing a party's case with prejudice or entering judgment against a party and also includes imposing attorney's fees for the

8

entire cost of the litigation. *Reed,* 312 F.3d at 1195; *Courtesy Inns*, 40 F.3d at 1085, 1089-90. Dismissing a case or entering judgment against a party is a severe sanction and is only appropriate when a lesser sanction would not serve the ends of justice. *Reed*, 312 F.3d at 1195 (quoting *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1396 (10th Cir. 1988)). In determining whether such a sanction is appropriate, the district court must consider: "(1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant." *Id*. (citation omitted).

Anchondo has been significantly prejudiced by Backal and Dunn's actions in providing a false response to Request No. 16 and their failure to timely submit her claim to National Union. Because of ACA's false response, Anchondo was forced to investigate and establish that the National Union policy was in effect when she filed her lawsuit. Insurance is an asset created specifically to satisfy claims made by litigants. FED. R. CIV. P. 26(b)(2) cmt. (1970). Backal admitted that the purpose of purchasing insurance was to cover lawsuits like Anchondo's. (Doc. 143 at 42.) In a claims made policy, notice to the insurer of a claim or occurrence during the policy period is the event that invokes coverage under the policy. *LaForge*, 37 F.3d at 583. When an insured fails to give clear notice of a claim or occurrence during the policy period, the insurer may properly deny coverage. *Id.* at 584-85. Because of the false response and the failure to timely submit the claim, Anchondo has been deprived of the opportunity to recover her judgment and attorney's fees from National Union.

Backal and Dunn's actions have significantly interfered with the judicial process. Had they provided a correct response to Request No. 16 and timely tendered the defense of Anchondo's lawsuit to National Union, ACA would have had insurance coverage available under the National

Union policy, and National Union would have been obligated to assume the defense of ACA and to pay the judgement and attorney's fees and costs awarded. Thus, the story of Anchondo's litigation with ACA would have ended shortly after Court approval of the settlement and the dismissal with prejudice on December 16, 2009. Instead, Anchondo has been forced to pursue two separate motions for sanctions and to endure another twenty-one months of litigation.

In addition to prolonging the litigation in this case, Backal and Dunn interfered with the judicial process by misleading the Court regarding the insurance status of ACA during the relevant period. The intentional deception is evidenced by the inconsistencies in the written submissions to Anchondo and the Court as well as Dunn and Backal's testimony at the hearings on the motions for sanctions. False testimony and submissions are intolerable because they erode public confidence in judicial decisions and undermine the entire judicial process. *Fidelity Nat'l Title Ins. Co. of N.Y. v. Intercounty Nat'l Title Ins. Co.*, No. 00 C 5658, 2002 WL 1433717, at *12 (N.D. Ill. July 2, 2002) (quoting *Quela v. Payco-Gen. Am. Creditas, Inc.*, No. 99 C 1904, 2000 WL 656681, at *7 (N.D. Ill. May 18, 2000)).

Finally, there can be no doubt that Backal and Dunn are culpable because they have attempted to deceive both Anchondo and the Court about the existence of the National Union insurance policy. They filed a response to Request No. 16 that contradicts their initial disclosures. They provided testimony that the initial disclosures were not correct that is not plausible or worthy of credit. Further, their testimony is flatly contradicted by the National Union documents and Backal's testimony last year. This seems to be a continuing pattern in this case: ACA, through Backal and Dunn, has previously provided false information during discovery in this case (Doc. 61 at 10-11); and ACA, through Backal and Dunn, has previously changed its position on an issue in

this litigation (Doc. 119 at 2-3.). Unfortunately, this is not the first time that I have found Backal and Dunn not to be credible witnesses. (Doc. 61 at 10-11; Doc. 119 at 2-3.)

Sanctions are appropriate against Backal because, as President and Chief Executive Officer of ACA, he has a substantial interest in the outcome of the litigation and he substantially participated in the deceptive practices that have harmed Anchondo. *See Helmac*, 150 F.R.D. at 568. Sanctions are also appropriately awarded against Dunn because he has actively participated in the deceptive acts. I have previously found that Dunn does not maintain a normal attorney-client relationship with ACA and Backal. (Doc. 119 at 3-4.) Anchondo provided further proof on this issue when she produced documents showing that Dunn is listed as a "Manager" of ACA and had authority to sign on ACA's bank accounts. (Doc. 132, Ex. F at 1-2.) While denying that he is a Manager of ACA, Dunn did admit that he does not have authority to sign on the bank accounts of any of his other clients. (Doc. 142 at 10.)

Significant sanctions have been imposed on non-parties and lawyers for bad faith litigation conduct. *See Chambers*, 501 U.S. at 40, 55 (upholding sanctions of almost $1 million in attorneys' fees and costs against sole shareholder and director of company); *Amerisource Corp. v. RX USA Int'l, Inc.*, No. 02-CV-2514 (JMA), 2010 WL 2730748, at *8 (E.D.N.Y. July 6, 2010) (imposing sanctions of $100,000 against defendant and its non-party majority shareholder and chief executive); *In re Bridgestone/Firestone, Inc. Tire Prods. Liab. Litig.*, No. 1:00-ml-09374-SEB-JMS, 2010 WL 2484250, at *2, *8 (S.D. Ind. June 11, 2010) (imposing sanctions of $50,000 each against two lawyers and sanctions of $100,000 against expert witness and consultant); *Bray & Gillespie Mgmt.*, 259 F.R.D. at 588-91 (ordering defense lawyers to pay plaintiffs' attorneys' fees and costs, including expert witness fees, incurred in filing motion for sanctions and proceedings on motion).

There appears to be only one reported case that considers a similar situation where defendants and their lawyers failed to properly disclose insurance coverage during discovery. In that case, former directors of Peoples Savings and Loan (S&L) failed to disclose to the plaintiffs in a civil RICO action that there was potential insurance coverage for their actions under an insurance policy issued by a group of insurance companies known as CNA. *Crowe v. Smith*, 151 F.3d 217, 221-22 (5th Cir. 1998). Believing there was no insurance coverage, the plaintiffs settled with the S&L and its former officers and directors for $2.25 million. *Id.* at 224. During discovery against the remaining defendants, the plaintiffs discovered the existence of the policy and filed a motion to set aside the settlement and to sanction the S&L directors. *Id.* at 224-25. The plaintiffs dismissed their motion for sanctions after CNA paid an additional $4 million to plaintiffs. *Id.* at 225 n.9. The district court subsequently entered its own motion for sanctions under its inherent powers against CNA and the attorneys who were defense counsel in the underlying case and counsel for CNA. *Id.* at 225. The district court found that the defendants had willfully conspired to defraud the plaintiffs by concealing the policy, and the court imposed fines payable to the court of $5 million on CNA and $75,000 on one of its coverage counsel, and imposed sanctions consisting of fines, reprimands, and suspensions from the practice of law on the other attorneys. *Id.* at 221, 225-26.

The Fifth Circuit reversed all the sanctions imposed except for those imposed on James Berry, who represented four former directors of the S&L. *Id.* at 238-39; *see also Crowe v. Smith*, 261 F.3d 558, 562-66 (5th Cir. 2001). The court analyzed whether the lawyers violated a specific duty to respond accurately to discovery requests by either knowingly making a false response to a discovery request or knowingly assisting another defendant in making or concealing a false response. *Crowe*, 151 F.3d at 236-37, 237 n.30. The district court imposed sanctions on Berry

because, after he learned of the existence of the CNA policy, he subsequently responded to plaintiffs' request on behalf of his fourth client and denied the existence of any insurance coverage. *Id.* at 239. The Fifth Circuit affirmed the district court's finding of bad faith conduct and sanction of Berry's suspension from the practice of law before the Western District of Louisiana for nine months. *Id.* at 226, 239.

Unlike *Crowe*, National Union has not stepped forward to provide coverage under its policy, so I must consider what sanctions are appropriate under the circumstances. Sanctions should be narrowly tailored to address the misconduct and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. Further, sanctions should be imposed against the individual who is at fault for the violation, and the court's chosen sanction must be both just and related to the particular sanctionable act committed. *Myers v. Colgate-Palmolive Co.*, 26 F. App'x 855, 862 (10th Cir. 2002) (unpublished) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)); *In re Sanction of Baker*, 744 F.2d 1438, 1440-41 (10th Cir. 1984). There is clear and convincing evidence that Backal and Dunn acted in bad faith in attempting to deceive both Anchondo and the Court about whether ACA had insurance coverage when this lawsuit was filed and in failing to submit the claim to National Union. Further, both Backal and Dunn admit they have not paid the prior award of sanctions against them, and they have failed to produce any evidence of their financial inability to pay the modest amount awarded against them. Under the circumstances, it is appropriate to sanction Backal and Dunn in the amount that they have harmed Anchondo and the class, and to award the attorneys' fees and costs incurred in connection with this motion.

Thus, I recommend that Judge Brack:

1. Sanction Backal and Dunn, jointly and severally, in the amount of $69,477.56, payable to Anchondo and her attorneys. This figure is computed as follows:

| | |
|---|---|
| $4,020.00 | (67 class members at $60 each), plus |
| $3,600.00 | (award to Anchondo), plus |
| $63,333.52 | (attorneys' fees and costs in district court), plus |
| $4,213.57 | (sanctions for first Motion for Sanctions), plus |
| $9,310.47 | (attorneys' fees and costs on appeal), minus |
| $15,000.00 | (ACA's retention under the policy, which it cannot pay). |

2. Order Backal to provide addresses for the class members. If Backal does not comply, the undistributed class damages shall be donated to the National Law Center's Cy Pres Program, as provided in the settlement agreement.

3. Order Backal and Dunn, jointly and severally, to pay Anchondo $6,985.90 for the attorneys' fees and costs she has incurred in connection with pursuing this motion.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

*William P. Lynch*
William P. Lynch
United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.

14