IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELSA ANCHONDO, on behalf of herself and
all others similarly situated,

        Plaintiff,

v.                                                        CV 08-0202 RB/WPL

ANDERSON, CRENSHAW, & ASSOCIATES,
L.L.C.,

        Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

Before me today is Plaintiff Elsa Anchondo's Third Motion for Sanctions against Steven R. Dunn, counsel for Defendant Anderson, Crenshaw, & Associates, LLC ("ACA"). (Doc. 169.) Anchondo's motion concerns Dunn's failure to comply with an order to compel responses to assets discovery. (Doc. 170 at 1-2). The Court referred this matter to me to make findings of fact, conduct legal analysis, and recommend a final disposition (Doc. 174), and the issue has been fully briefed (Doc. 173). Although Anchondo has asked the Court to order Dunn to appear in person to explain why sanctions are not appropriate (Doc. 170 at 4), I find that a hearing is unnecessary to determine whether sanctions are warranted here. Still, some discussion of how this state of affairs developed is in order.

Anchondo brought a putative class action against ACA for violating the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et seq.*, and the New Mexico Unfair Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq.* (Doc. 1.) After completing some discovery, the parties reached a settlement, which included a $3,600 payment to Anchondo as the class representative

1

and $60 to each class member, injunctive relief to prevent ACA from engaging in the conduct that prompted the lawsuit, and Anchondo's attorneys' fees and costs. (*See* Doc. 70 Ex. 1 at 2.) After appropriate notice to the class, the Court approved the settlement, awarded attorney's fees and costs, and dismissed the case with prejudice in late 2009. (Doc. 89; Doc. 90.) However, ACA never paid the settlement amount or attorney's fees and costs. (*See* Doc. 144 at 1.)

On February 1, 2010, Anchondo served post-judgment discovery on ACA. (*See* Doc. 95.) ACA failed to respond at all, and the Court granted Anchondo's motion to compel responses to Anchondo's discovery requests. (Doc. 100.) When ACA did not comply with that Order, Anchondo filed a Motion for Sanctions. (Doc. 112.) After a hearing on the Motion (Doc. 118), I ordered ACA to provide responses to Anchondo's post-judgment discovery requests and further ordered ACA, Dunn, and Thomas Backal, ACA's President and Chief Executive Officer, jointly and severally, to pay Anchondo for expenses incurred in connection with her Motion (Doc. 119 at 4).[1] Following this order, the Court adopted my recommendation and ordered ACA, Dunn, and Backal, jointly and severally, to pay to the Clerk of Court the sum of $500 per day for every subsequent day that the discovery responses were not provided. (Doc. 120.) ACA filed for bankruptcy shortly thereafter. (Doc. 127.)

Later, Anchondo filed a Second Motion for Sanctions against Backal and Dunn, alleging among other things that Backal and Dunn had misrepresented key facts during the discovery process. (Doc. 131; Doc. 132.) I found this allegation to be true and cataloged the ways in which Backal and Dunn had attempted to deceive Anchondo and the Court. (Doc. 144 at 2-6.) Based on this finding, I recommended that the Court sanction Backal and Dunn jointly and severally for the amount of the settlement, the amount awarded on the first Motion for Sanctions, and other

---

[1] I previously observed that Dunn's relationship with ACA and Backal has not been "a normal attorney-client relationship." (*See* Doc. 144 at 11; *see also* Doc. 119 at 3-4.)

associated sums. (*Id.* at 14.) I further recommended that the Court order Backal and Dunn, jointly and severally, to pay for the attorneys' fees and costs incurred by Anchondo in connection with pursuing the Second Motion. (*Id.*) The Court adopted my recommendation. (Doc. 148.)

Following the Court's adoption of that recommendation, Anchondo served assets discovery on Backal and Dunn. (*See* Doc. 152.) Anchondo considered their subsequent responses to be "evasive and incomplete" and moved to compel discovery. (Docs. 156, 157, 158 & 159.) When Backal and Dunn failed to file any response to those motions, I found that they had consented to the motions. (Doc. 162.) Accordingly, on May 1, 2012, I ordered Backal and Dunn to provide full and complete responses to the Interrogatories and Requests for Production in question by May 14, 2012. (*Id.*) I also advised Backal and Dunn that failure to comply with the order could lead to the imposition of sanctions. (*Id.*)

When May 14 arrived, Backal and Dunn filed a motion requesting that the deadline be extended due to family issues experienced by Dunn. (Doc. 163.) Although Anchondo did not object to some sort of extension, she counseled that Dunn had been seeking extensions on this basis for over a year and expressed concern that "these family issues could be used in this lawsuit to justify repeated extensions for an indefinite or lengthy period of time." (Doc. 164 at 3.) Despite this warning, I granted Backal and Dunn's motion and gave them until June 15, 2012 to provide the relevant responses. (Doc. 165.)

Backal subsequently filed a Suggestion of Bankruptcy. (Doc. 166; Doc. 167.) However, Dunn never provided anything at all to either Anchondo or the Court by the June 15 deadline. Consequently, on July 18, 2012, Anchondo filed this Third Motion for Sanctions and supporting memorandum on the ground that Backal and Dunn never complied with the order to compel. (Doc. 169; Doc. 170.) Because Backal has declared bankruptcy, Anchondo observes that

3

proceedings against him are automatically stayed and asks that I assess sanctions only against Dunn. (Doc. 170 at 3-4.)

In his response, Dunn admits that he has not complied with my order to compel. (Doc. 171 at 1.) To justify this complete failure to comply, he points to two circumstances. First, Dunn states that he expected the Court to issue a clarifying order in the wake of Backal's bankruptcy, since a bankruptcy petition operates as a stay of proceedings against a bankrupt debtor. (*Id.* at 2-3.) Dunn apparently contends that the absence of such a clarifying order from this Court led him to believe that the motion to compel might be stayed and that the June 15 deadline might no longer apply to him. (*Id.*) Second, Dunn points to the same family issues that led me to extend the original deadline for responding to Anchondo's Interrogatories and Requests for Production. (*Id.* at 3-4.) Dunn states in his response that he "recognizes the Court's [*sic*] prior order, did not intend to violate same and will duly comply." (*Id.* at 1.) Dunn filed this response on August 6, 2012; as of today, I have received no indication that Dunn has complied with the order to compel.

When a party fails to obey a court order regarding discovery, the court has broad discretion to impose one or more of the sanctions listed in Rule 37(b)(2) or any other sanction it deems appropriate. FED. R. CIV. P. 37(b)(2); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987). The court will require the party who failed to comply with the court order to pay the reasonable expenses incurred as a result of the failure unless the court finds that the failure to comply was substantially justified or that other circumstances exist that would make the award unjust. FED. R. CIV. P. 37(b)(2)(C); *see also Neiberger v. Fed Ex Ground Package Sys., Inc.*, 566 F.3d 1184, 1191 (10th Cir. 2009). Sanctions

may also include payment of a fine. *See Law v. Nat'l Collegiate Athletic Ass'n*, 134 F.3d 1438, 1443 (10th Cir. 1998); *see also* FED. R. CIV. P. 16(f)(1)(C).

Here, Dunn concedes that he failed to obey the order to compel by the deadline imposed. He appears to argue, however, that his complete failure to abide by the deadline is excusable for a number of reasons. I have addressed Dunn's lack of credibility throughout these proceedings in previous orders. (*See* Doc. 119 at 2-3; Doc. 144 at 4-5.) Still, I find Dunn's excuses here to be incredible in and of themselves.

First, Dunn contends that he expected the Court *sua sponte* to issue clarifying orders in the matter,[2] stating that courts have done so in other cases involving solvent and insolvent codefendants in which Dunn has served as counsel. (Doc. 171 at 2.) Oddly, the one example of such a clarifying order that Dunn provides to support this expectation was issued by the court in question on July 27, 2012, almost a month and a half after the June 15 deadline in this matter. (*See* Doc. 171 Ex. 2.) Dunn clearly could not have relied on a July 27 order to support his decision to ignore a June 15 deadline.

Regardless of the timing, Dunn does not explain why the supposed expectation of a clarifying order might have relieved him of his duty to comply with the previously imposed deadline in this matter. He does not argue, and could not argue, that the Court was under an affirmative obligation to issue such an order once Backal filed for bankruptcy. He also does not argue, and could not argue, that the Court was under an obligation to explicitly reaffirm the existing deadline as to Dunn in the wake of Backal's bankruptcy. In short, there was no reason for Dunn to believe that the possibility of a clarifying order being issued by this Court would be at all relevant to his existing obligations.

---

[2] Dunn did not move for such an order.

5

Still, Dunn implies that he expected the Court to issue a stay as to him, pursuant to 11 U.S.C. § 362(a)(1), due to Backal's bankruptcy. However, Dunn acknowledges that when a bankruptcy petition triggers a stay of judicial proceedings against a debtor, such a stay does not generally extend to solvent codefendants. (Doc. 171 at 2-3.) This is indeed the firm rule in the Tenth Circuit, holding true in all circumstances except for the rare occasion where the solvent and insolvent codefendants are very closely identified with each other. *Okla. Federated Gold & Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994). Dunn does not allege that such unusual circumstances exist here. In fact, as Anchondo points out, Dunn has filed documents with the Tenth Circuit alleging exactly the opposite. (Doc. 172 Ex. A at 5 (citing the rule and the exception in arguing that a joint appeal with Backal should only be stayed as to Backal alone).) Thus, although Dunn implies that the Court might have issued a stay as to Dunn due to Backal's bankruptcy, he acknowledges that he has no basis for so believing.

Undeterred, Dunn observes that the Court also has the inherent authority to issue a stay of proceedings in any case. (*Id.* at 3.) Of course, Dunn did not file any motion requesting such a stay. The apparent theory is that because the Court could conceivably have issued a stay as to Dunn *sua sponte* following Backal's declaration of bankruptcy, Dunn was no longer obliged to comply with the June 15 deadline to provide responses to Anchondo. There is no authority to support this absurd proposition, and Dunn makes no attempt to argue otherwise.

Dunn nonetheless says that he "believes the Court should issue an appropriate order administratively closing the case as to Backal and then allow Dunn a reasonable opportunity to respond to the Court's prior order . . . before determining whether sanctions are appropriate." (*Id.* at 3.) Dunn cites no authority to support this belief, and at any rate his obligations under the order were distinct from Backal's obligations. (*See* Doc. 162 at 2.) Because Backal's bankruptcy

6

is irrelevant to Dunn's obligations under the motion to compel, I see no reason why the status of these proceedings as to Backal would be any more relevant. Further, considering that Dunn had forty-five days to respond to the order to compel, and considering that that deadline itself passed over one hundred days ago, I cannot conclude that Dunn has not had "a reasonable opportunity to respond."

Finally, Dunn points out the existence of "severe, personal issues which have detracted [*sic*] him from maintaining a full time practice" (Doc. 171 at 3) and attaches an affidavit describing these issues in more detail (Doc. 171 Ex. 1). Dunn has brought these issues to my attention in the past (Doc. 163), and I have previously granted him a deadline extension on this basis (Doc. 165). However, Dunn did not move for a second deadline extension before the June 15 deadline. Nor has he filed such a request since June 15. Instead, Dunn allowed the deadline to pass without seeking leave of the Court; indeed, Dunn allowed the deadline to pass without filing a single document at all in this case, save for his response to this motion.

Dunn's reliance on his family issues as an excuse for missing the June 15 deadline is betrayed by his continued observance of his other legal obligations. When the deadline for filing a brief in this case before the Tenth Circuit approached, Dunn somehow was able to file a motion to extend the deadline in that matter. (Doc. 172 Ex. B at 1.) When the Tenth Circuit ordered the parties to take a position on Backal's notice of bankruptcy, Dunn was able to file his response just over one week later. (Doc. 172 Ex. A at 1.) In fact, when Anchondo filed this third motion for sanctions, Dunn was able to timely file his response to the motion. (*See* Doc. 171 at 1.) Yet somehow Dunn insists that he was unable to comply with the order to compel, even after I extended the deadline for compliance to forty-five days. Indeed, almost 150 days have passed since the order was entered, and Dunn still has not complied with that order.

Notably, all of the matters in which Dunn has met his obligations involve the express imposition of sanctions against Dunn himself. (*See* Doc. 172 Ex. 2 (motion to extend time in Dunn's appeal of sanctions imposed against him); Doc. 172 Ex. 1 (response to an order in the same matter); Doc. 171 (response to Anchondo's third motion for sanctions).) Although I observed in my order to compel that failure to comply could result in the imposition of sanctions (Doc. 162 at 2), it seems that Dunn is not sufficiently motivated to meet his legal obligations unless the threat of sanctions is imminent or realized. While Dunn states that he "will duly comply" with the order to compel (Doc. 171 at 1), I do not give any credit to this statement in light of his aforementioned history of inconsistent compliance with court orders.

In summary, I find that Dunn failed to obey the motion to compel and that his excuses for doing so are incredible and insubstantial. His response to this motion is a catalog of implausible cop-outs. His excuses are not supported by any legal authority, and he does not even try to pretend otherwise. I do not believe that Dunn, an educated legal professional, seriously believed for even one moment that he was relieved of his obligation to abide by that order for any of the reasons he has given. It is clear that Dunn is making excuses to avoid his obligations in this case, as he has been doing for several years now.

Notably, this is the third time that Dunn has attempted to shirk his duties by lying to the Court, misleading the Court, or making frivolous excuses for noncompliance. This should be the last time that he does so. In light of Dunn's history of repeated defiance of orders in this case, only the imposition of serious sanctions is likely to compel Dunn to comply with this order and to discourage further noncompliance.

It is therefore **RECOMMENDED** that the Court:

  1. order Dunn to immediately comply with his obligations under the May 1, 2012 Order Granting Motions to Compel (Doc. 162);

  2. order Dunn to pay Anchondo's attorneys' fees and costs incurred in connection with pursuing this motion;

  3. order Dunn to pay to the Clerk of Court the sum of $5,000 if the required discovery responses are not provided by **October 3, 2012**;

  4. order Dunn to pay the Clerk of Court the additional sum of $750 per day for every day after **October 3, 2012,** that the discovery responses are not provided; and

  5. advise Dunn that failure to comply with any order of the Court related to these recommendations, or with any other order issued at any point in these proceedings, will result in the institution of criminal contempt proceedings.

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.**

            _____
            William P. Lynch
            United States Magistrate Judge

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.